```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP
-------------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

CHRISTOPHER WINKLER, ASA GOSMAN,
BRYAN GOSMAN, AND BOB GOSMAN
CO., INC.,

                        Defendants.
-------------------------------------------------X
```

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 20 2021 ★

LONG ISLAND OFFICE

INDICTMENT

Cr. No. _____
(T. 18, U.S.C. § 371; T. 18, U.S.C.
§§ 1341 & 2; T. 18, U.S.C. § 1343;
T. 18, U.S.C § 1519; T. 18, U.S.C. §
1512(c)(1); T. 18, U.S.C. § 1503)

**CR 21 217**

**AZRACK, J.**

**SHIELDS, M.J.**

THE GRAND JURY CHARGES THAT:

**COUNT ONE**
**(Conspiracy - 18 U.S.C. § 371)**

FACTUAL BACKGROUND

At all relevant times herein:

**A. Defendants and Co-Conspirator**

1. Defendant CHRISTOPHER WINKLER ("WINKLER") was a resident of Montauk in Suffolk County, New York. WINKLER was a fishing captain and licensed National Oceanic and Atmospheric Administration ("NOAA") operator of the Fishing Vessel (*F/V*) *New Age*, a 45.7-foot trawler/dragger. During 2014 through 2016, WINKLER owned the *New Age*.

2. During 2014 and 2015, WINKLER routinely sold his catch to a corporation (referred to herein by the pseudonym, "BronxCo"), which was a fish dealer in the New Fulton Fish Market in the Bronx, New York. By July 2016, BronxCo had ceased operation, and the corporation was dissolved in 2017. BronxCo is an unindicted co-conspirator.

3. Defendant BOB GOSMAN CO., INC. ("GOSMANS") was a wholesale and retail seafood business in Montauk, New York. GOSMANS is criminally liable through the acts and omissions of its agents and employees. The GOSMANS facility had a dock, cold storage, and pack-out infrastructure that GOSMANS utilized to offload commercial fishing vessels. GOSMANS also had a federal dealer permit to account for fish that the company directly purchased from fishing vessels. In 2014 through 2016, the *New Age* frequently offloaded its catch at the GOSMANS facility in Montauk, New York. When WINKLER landed his catch at GOSMANS, GOSMANS would collect a fee for each box (also referred to as "carton") of fish that came through the facility. In addition, trucks operated by GOSMANS would take fish landed off of the *New Age* to BronxCo. In 2016, after BronxCo ceased commercial operations, WINKLER sold some of his illegal catch to GOSMANS.

4. Defendant ASA GOSMAN was a resident of Montauk in Suffolk County, New York. During 2014 through 2016, he had a management and ownership role in GOSMANS. During this time, ASA GOSMAN also had an ownership interest in BronxCo. ASA GOSMAN held the federal dealer permit that BronxCo utilized to file dealer reports with NOAA. One of ASA GOSMAN'S duties at BronxCo was to file dealer reports on behalf of that company.

5. Defendant BRYAN GOSMAN was a resident of Montauk in Suffolk County, New York. During 2014 through 2016, he had a management and ownership role in GOSMANS. During this time, BRYAN GOSMAN also had an ownership interest in BronxCo. One of BRYAN GOSMAN'S duties at BronxCo was to engage with WINKLER. On several occasions during the conspiracy, BRYAN GOSMAN received a commission on illegal fluke that was sold to BronxCo.

2

## B. Legal Framework

6. The commercial fishing industry was regulated by both state and federal authorities in order to ensure a sustainable fishery in which harvesters could fairly participate, and to prevent fish stocks from becoming depleted. Commercial harvesters, *i.e.,* commercial fishing vessels, are required to comply with state and federal regulations. As part of regulating the fishery, limits are set on the amount of fish a commercial harvester can catch and land. NOAA sets the limit each state may harvest, and then each state divides that limit among its own commercial harvesters to share.

7. To comply with limits set by NOAA, New York established a system for commercial fishing vessels that landed their catch at New York ports. *See* N.Y. Environmental Conservation Law §§ 13-0340-b, 13-0340-f. At different times, New York set limits on the amount of each type of fish a commercial harvester could catch in one day (called a daily trip limit), or a limit on the amount of each type of fish a commercial harvester could catch in one week (called a weekly limit). At some times the limit that would be set would be zero, meaning that no fish of that type could be landed; the fishery for that type of fish was considered closed during those times.

8. To help ensure that commercial harvesters were all abiding by the rules, and to help monitor how much fish was being caught, vessels were required to create and submit various reports about the fish that they caught. One requirement was that vessels had to complete a Fishing Vessel Trip Report ("FVTR") at the end of each trip. 50 C.F.R. § 648.7(b)(1)(i). The FVTR required information such as date, vessel name, permit number, Coast Guard document number, gear used, species caught, species weight, number of hauls, port of landing, and if available, identity of the fish purchaser(s) ("fish dealers"). Vessel operators were required to sign the FVTR under a text box that read, "I certify that the information provided on this form is true,

complete and correct to the best of my knowledge, and made in good faith. Making a false statement on this form is punishable by law (18 U.S.C. [§] 1001)." For vessels such as the *New Age*, which held a Northeast multispecies permit, FVTRs were required to be mailed to a NOAA office in Gloucester, Massachusetts, on a weekly basis. 50 C.F.R. § 648.7(f)(2). In addition, federal regulations provided that "[c]opies of fishing log reports must be kept on board the vessel and available for review for at least 1 year, and must be retained for a total of 3 years after the date the fish were last possessed, landed, and sold." 50 C.F.R. § 648.7(e)(2).

9. In addition to setting limits on the amount of fish a commercial harvester could catch at certain times, the federal government also required harvester and buyer to follow certain rules when they sold and bought the fish. Federally permitted fishing vessels, such as those with a federal summer flounder permit or a multispecies permit, *e.g.*, *New Age*, were required to sell their catch to a federally-licensed fish dealer. 50 C.F.R. § 648.14(c).

10. NOAA required that federally-licensed fish dealers submit weekly, electronic reports detailing information about the fish they purchased. To submit the reports, the dealer logged onto a NOAA website using a username and password. 50 C.F.R. § 648.7(a)(1), 648.7(f). The website was maintained by a NOAA contractor, and the contractor forwarded the dealer information to NOAA through a website that was available to designated NOAA components. NOAA was able to generate reports from the website.

11. Federally-licensed fish dealers were required to provide information about black sea bass, bluefish, butterfish, dogfish, fluke, hake, monkfish, scup, skate, spots, and squid to NOAA. The dealer reports included information such as date of landing, port of landing, catch vessel, corresponding FVTR numbers, commercial grade, species, price, and weight. NOAA utilized the

dealer reports as a check on the information submitted in FVTRs, as well as a source of information for fisheries management.

12. Pursuant to the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens"), at 16 U.S.C. § 1860(a), NOAA could seize and sell "any fish (or the fair market value thereof) taken or retained, in any manner, in connection with or as a result of the commission of any act prohibited by [a Magnuson-Stevens regulation]." Magnuson-Stevens regulations made it unlawful for any person to "[m]ake any false statement or provide any false information on, or in connection with, an application, declaration, record or report under the [Magnuson-Stevens regulations]." 50 C.F.R. § 648.14(a)(5); *see also* 50 C.F.R. §§ 600.725(l), 648.14(a)(6). The State of New York had an independent property interest in fish that was landed in New York in excess of applicable quota or during a closed season. *See* N.Y. Environmental Conservation Law §§ 11-0519, 71-0907, 71-0909; N.Y. State Finance Law § 83.

## THE CONSPIRACY

13. Beginning on or about May 1, 2014, and continuing to on or about July 11, 2016, in the Eastern District of New York, and elsewhere, CHRISTOPHER WINKLER, ASA GOSMAN, BRYAN GOSMAN, and, acting through its agents and employees, BOB GOSMAN CO., INC. did knowingly and willfully conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, including BronxCo:

(a) to defraud the United States by interfering with and obstructing, by deceitful and dishonest means, a lawful function of NOAA: the collection, evaluation, and analysis of biological, economic, and catch data;

(b) to knowingly and intentionally defraud NOAA and the State of New York of fish and the fair market value thereof, and to obtain money and property from NOAA and the State of New York by means of materially false and fraudulent pretenses and

5

representations, and for the purpose of executing such scheme and artifice, to place in any post office and authorized depository for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, in violation of Title 18, United States Code, Sections 1341 and 2; and

(c) to knowingly and intentionally defraud NOAA and the State of New York of fish and the fair market value thereof, and to obtain money and property from NOAA and the State of New York by means of materially false and fraudulent pretenses and representations, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted writings, signs, and signals by means of wire communication in interstate commerce, in violation of Title 18, United States Code, Sections 1343 and 2.

## MANNER AND MEANS

14. In furtherance of the conspiracy, WINKLER, ASA GOSMAN, BRYAN GOSMAN, and GOSMANS employed the following manner and means:

(a) From May 2014 through June 2016, on at least seventy separate occasions, WINKLER took his vessel the *New Age* out on fishing trips, on which he cumulatively overharvested approximately 74,000 pounds more fluke, and approximately 4,000 pounds more black sea bass, than he was allowed to catch under applicable quotas during this time. WINKLER created FVTRs that failed to report that he landed this fish in excess of applicable quotas.

(b) From May 2014 through April 2016, ASA GOSMAN and BRYAN GOSMAN used their companies, BronxCo and then GOSMANS, to purchase illegal fish from WINKLER.

(c) From May 2014 through April 2016, BronxCo paid WINKLER approximately $237,000 for unreported and overharvested fluke, and approximately $15,000 for unreported and overharvested black sea bass.

(d) From May 2016 through July 2016, GOSMANS paid WINKLER approximately $16,000 for unreported and overharvested fluke.

(e) Depending on what business was purchasing illegal fish from WINKLER, to avoid detection of their scheme by New York State and federal authorities, WINKLER, ASA GOSMAN, BRYAN GOSMAN, BronxCo, and GOSMANS coordinated to enter false amounts and species of fish on records that were required to be submitted to NOAA. This included multiple species of fish including black sea bass, bluefish, butterfish, dogfish, goosefish, fluke, hake, monkfish, scup, skate, spots, and squid.

(f) WINKLER mailed and caused to be mailed false records from New York State to NOAA's Regional Fisheries Management Office in Massachusetts, and BronxCo, ASA GOSMAN, and GOSMANS caused false dealer reports to be transmitted electronically across state lines to NOAA.

## OVERT ACTS

15. In furtherance of the conspiracy, and to effect the objects thereof, there was committed by at least one of the co-conspirators in the Eastern District of New York, at least one of the following overt acts, among others:

### Illicit Fishing Activity

*Overt Act 1*: Between on or about May 1, 2014, and August 28, 2015, on at least one occasion, WINKLER harvested fluke in excess of the applicable quota.

*Overt Act 2*: Between on or about April 20, 2015, and August 25, 2015, on at least one occasion, WINKLER harvested black sea bass during a closed season.

*Overt Act 3:* On or about April 25, 2015, while engaged in fishing activity aboard the *New Age*, WINKLER intentionally discarded and caused to be intentionally discarded overharvested fluke when the *New Age* was approached by a Coast Guard vessel.

*Overt Act 4:* Between on or about May 18, 2016, and June 3, 2016, on at least one occasion, WINKLER harvested fluke in excess of the applicable quota.

### Landings and Offloads

*Overt Act 5:* Between on or about May 1, 2014, and August 28, 2015, on at least one occasion, WINKLER landed fluke in excess of the applicable quota at the GOSMANS Dock in Montauk, New York.

*Overt Act 6:* Between on or about May 1, 2014, and April 19, 2016, on at least one occasion, GOSMANS charged WINKLER an over-the-dock fee for fish, including fluke landed in excess of the applicable quota, that the *New Age* offloaded at GOSMANS.

*Overt Act 7:* Between on or about April 20, 2015, and August 25, 2015, on at least one occasion, WINKLER landed black sea bass during a closed season at the GOSMANS dock in Montauk, New York.

*Overt Act 8:* Between on or about May 18, 2016, and June 3, 2016, on at least one occasion, WINKLER offloaded fluke, that was in excess of the applicable quota, at the GOSMANS facility in Montauk, New York.

*Overt Act 9:* Between on or about May 18, 2016, and July 11, 2016, on at least one occasion, GOSMANS charged WINKLER an over-the-dock fee for pack-out services for fish, including fluke landed in excess of the applicable quota, that the *New Age* offloaded at GOSMANS.

### False FVTRs

*Overt Act 10:* Between on or about May 1, 2014, and September 28, 2015, on at least one occasion, WINKLER created an FVTR that failed to state the total amount of fluke harvested during the fishing trip.

8

*Overt Act 11:* Between on or about May 20, 2014, and May 31, 2014, on at least one occasion, WINKLER created an FVTR that falsely reported fluke as butterfish.

*Overt Act 12:* Between on or about May 1, 2014, and September 28, 2015, on at least one occasion, WINKLER caused the mailing of a fraudulent FVTR to NOAA that failed to accurately report the amount of fluke caught during a fishing trip.

*Overt Act 13:* Between on or about April 20, 2015, and September 28, 2015, on at least one occasion, WINKLER created an FVTR that failed to state the total amount of black sea bass harvested during the fishing trip.

*Overt Act 14:* Between on or about April 20, 2015, and September 28, 2015, on at least one occasion, WINKLER caused the mailing of a fraudulent FVTR to NOAA that failed to accurately report the amount of black sea bass caught during a fishing trip.

*Overt Act 15:* Between on or about May 18, 2016, and June 24, 2016, on at least one occasion, WINKLER created an FVTR that failed to state the total amount of fluke harvested during the fishing trip.

*Overt Act 16:* Between on or about May 18, 2016, and June 24, 2016, on at least one occasion, WINKLER caused the mailing of a fraudulent FVTR to NOAA that failed to accurately report the amount of fluke caught during a fishing trip.

### False Dealer Reports

*Overt Act 17:* Between on or about May 1, 2014, and December 31, 2015, on at least one occasion, ASA GOSMAN created a dealer report, on a computer located at the GOSMANS office, which failed to accurately record the amount of fish, including fluke, that BronxCo purchased from WINKLER.

*Overt Act 18:* Between on or about May 27, 2014, and September 24, 2015, on at least one occasion, ASA GOSMAN created a dealer report that falsely reported fluke as butterfish.

*Overt Act 19:* Between on or about May 1, 2014, and December 31, 2015, on at least one occasion, ASA GOSMAN caused the interstate electronic transmission to NOAA of a dealer report that failed to accurately report the amount of fluke that BronxCo purchased from WINKLER.

*Overt Act 20:* Between on or about April 20, 2015, and December 31, 2015, on at least one occasion, ASA GOSMAN created a dealer report that failed to accurately record the amount of black sea bass that BronxCo purchased from WINKLER.

*Overt Act 21:* Between on or about April 20, 2015, and December 31, 2015, on at least one occasion, ASA GOSMAN caused the interstate electronic transmission to NOAA of a dealer report that failed to accurately report the amount of black sea bass that BronxCo purchased from WINKLER.

*Overt Act 22:* Between on or about May 23, 2016, and June 27, 2016, on at least one occasion, GOSMANS created a dealer report that failed to accurately record the quantity and species of fish that GOSMANS purchased from WINKLER.

*Overt Act 23:* Between on or about May 23, 2016, and June 27, 2016, on at least one occasion, GOSMANS caused the interstate electronic transmission to NOAA of a dealer report that failed to accurately report the amount of fluke that GOSMANS purchased from WINKLER.

### Sales and Payments

*Overt Act 24:* Between on or about May 1, 2014, and August 25, 2015, on at least one occasion, WINKLER sold fluke, which he caught in excess of the applicable quota, to BronxCo.

*Overt Act 25:* Between on or about May 1, 2014, and August 25, 2015, on at least one occasion, GOSMANS used its own vehicle and driver to transport fluke, which the *New Age* landed in excess of the applicable quota, to BronxCo.

*Overt Act 26:* Between on or about April 20, 2015, and August 25, 2015, on at least one occasion, WINKLER sold black sea bass to BronxCo during a closed season.

*Overt Act 27:* Between on or about April 20, 2015, and August 25, 2015, on at least one occasion, at the direction of BRYAN GOSMAN, BronxCo paid WINKLER for black sea bass that was not reported on WINKLER'S FVTR.

*Overt Act 28:* Between on or about May 1, 2014, and April 19, 2016, on at least one occasion, at the direction of BRYAN GOSMAN, BronxCo generated a check to pay WINKLER for fish, which included fluke that WINKLER harvested in excess of the applicable quota.

*Overt Act 29:* Between on or about May 1, 2014, and April 1, 2016, on at least one occasion, WINKLER deposited into his bank account a BronxCo check that paid for fish, including fluke taken in excess of the applicable quota, which was unreported on WINKLER's FVTR and BronxCo's dealer report.

*Overt Act 30:* Between on or about March 12, 2015, and July 31, 2015, on at least one occasion, BronxCo paid BRYAN GOSMAN a commission that corresponded to the quantity of unreported and over-quota fluke purchased by BronxCo.

*Overt Act 31:* Between on or about March 12, 2015, and July 31, 2015, on at least one occasion, BRYAN GOSMAN deposited a commission check for unreported and over-quota fluke into a bank.

11

*Overt Act 32:* On or about April 21, 2016, WINKLER deposited into a bank account a BronxCo check that paid for fish, including fluke taken in excess of the applicable quota, which was unreported on a WINKLER's FVTR and BronxCo's dealer report.

*Overt Act 33:* On or about April 27, 2016, at the direction of BRYAN GOSMAN, BronxCo generated a check to pay WINKLER for fish, which included fluke that WINKLER harvested in excess of the applicable quota.

*Overt Act 34*: Between on or about May 18, 2016, and June 3, 2016, on at least one occasion, WINKLER sold fluke, which the *New Age* landed in excess of the applicable quota, to GOSMANS.

*Overt Act 35*: Between on or about June 20, 2016, and July 11, 2016, on at least one occasion, WINKLER deposited into a bank account a GOSMANS check that paid for fish, including overharvested fluke, which was unreported on an FVTR and dealer report.

All in violation of Title 18, United States Code, Section 371.

### COUNTS TWO, THREE, FOUR, and FIVE
### (Mail Fraud - 18 U.S.C. §§ 1341 and 2)

16. Paragraphs 1 through 12 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

17. Fraudulent Scheme: During the year 2016, WINKLER captained the *New Age*. In May and June 2016, WINKLER knowingly and unlawfully harvested fluke in excess of New York State daily trip limits. In May 2016, WINKLER knowingly and unlawfully landed black sea bass in excess of the applicable quota. In order to conceal and cover-up his illegal harvest of this fish, WINKLER knowingly falsified the FVTRs. In the course of the scheme, from on or about May 18, 2016, through on or about June 23, 2016, WINKLER mailed false FVTRs to

12

NOAA. NOAA and New York State each had the legal right to seize and sell over-quota fluke and black sea bass, as well as other fish that were unreported on FVTRs.

18. On or about the dates set forth in the table below, within the Eastern District of New York, the defendant,

CHRISTOPHER WINKLER,

having knowingly and intentionally devised a scheme and artifice to defraud NOAA and the State of New York of fish and the fair market value thereof, and to obtain money and property from NOAA and New York State by means of materially false and fraudulent pretenses and representations (to wit: that the fish represented as caught on a Fishing Vessel Trip Report were a certain species, quantity, and weight, when in fact, the fish were not as represented on federal forms, and were in excess of New York State daily trip limits), and for the purpose of executing such scheme and artifice, placed in any post office and authorized depository for mail matter any matter and thing whatever to be sent and delivered by the Postal Service:

| COUNT | DATE (On or about, and between) | FISHING VESSEL TRIP REPORT NUMBER |
|---|---|---|
| 2 | May 18, 2016, and May 31, 2016 | 12516571 |
| 3 | May 25, 2016, and June 24, 2016 | 12516577 |
| 4 | May 26, 2016, and June 24, 2016 | 12516578 |
| 5 | June 3, 2016, and June 24, 2016 | 12516585 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS SIX, SEVEN, EIGHT, NINE, and TEN
### (Wire Fraud - 18 U.S.C. § 1343)

19. Paragraphs 1 through 12 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

20. Fraudulent Scheme: During the year 2016, WINKLER captained the *New Age*. In May and June 2016, WINKLER knowingly and unlawfully harvested fluke in excess of New York State daily trip limits. In May 2016, WINKLER knowingly and unlawfully landed black sea bass in excess of the applicable quota. In order to conceal and cover-up its purchase of this illegal fish, GOSMANS knowingly falsified the dealer reports that reflected purchases from the *New Age*. In the course of the scheme, from on or about May 18, 2016, through on or about June 27, 2016, GOSMANS transmitted false dealer reports to NOAA. NOAA and New York State each had the legal right to seize and sell over-quota fluke and black sea bass, as well as other fish that were unreported on dealer reports.

21. On or about the dates set forth in the table below, within the Eastern District of New York, the defendant, acting through its agents and employees,

BOB GOSMAN CO., INC.,

having knowingly and intentionally devised a scheme and artifice to defraud NOAA and the State of New York of fish and the fair market value thereof, and to obtain money and property from NOAA and New York State by means of materially false and fraudulent pretenses and representations (to wit: that the fish represented as purchased on federal dealer reports were a certain species, quantity, and weight, when in fact, the fish were not as represented on federal forms, and were in excess of New York State daily trip limits), and for the purpose of executing such scheme and artifice, transmit and cause to be transmitted writings, signs, and signals by means of wire communication in interstate commerce:

14

| COUNT | DATE (On or about, and between) | DEALER REPORT WITH CONFIRMATION NUMBER |
|---|---|---|
| 6 | May 19, 2016, and June 27, 2016 | 12490289 |
| 7 | May 25, 2016, and June 27, 2016 | 12552696 |
| 8 | May 26, 2016, and June 27, 2016 | 12552701 |
| 9 | May 27, 2016, and June 27, 2016 | 12679749 |
| 10 | June 3, 2016, and June 27, 2016 | 12597618 |

All in violation of Title 18, United States Code, Sections 1343.

## COUNT ELEVEN
(Obstruction - 18 U.S.C. § 1519)

22. Paragraphs 1 through 12 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

23. Between on or about May 18, 2016, and June 24, 2016, within the Eastern District of New York, the defendant,

CHRISTOPHER WINKLER,

did knowingly falsify and make false entries into records and documents (to wit: at least one Fishing Vessel Trip Report, also known as a fishing log) with the intent to impede, obstruct, and influence the proper administration of any matter, and in relation to and in contemplation of such matter, within the jurisdiction of any department and agency of the United States (to wit: NOAA, an agency of the Department of Commerce).

All in violation of Title 18, United States Code, Section 1519.

15

## COUNT TWELVE
(Obstruction - 18 U.S.C. § 1519)

24. Paragraphs 1 through 12 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

25. Between on or about May 18, 2016, and June 27, 2016, within the Eastern District of New York, the defendant, acting through its agents and employees,

BOB GOSMAN CO., INC.,

did knowingly falsify and make false entries into records and documents (to wit: at least one dealer report) with the intent to impede, obstruct, and influence the proper administration of any matter, and in relation to and in contemplation of such matter, within the jurisdiction of any department and agency of the United States (to wit: NOAA, an agency of the Department of Commerce).

All in violation of Title 18, United States Code, Section 1519.

## COUNT THIRTEEN
(Impeding a Grand Jury - 18 U.S.C. § 1512(c)(1))

26. Paragraphs 1 through 12 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

27. Between on or about March 7, 2017, and June 8, 2017, within the Eastern District of New York, the defendant,

BRYAN GOSMAN,

did corruptly destroy and conceal a record, document, and other object, and did attempt to do so, with the intent to impair its availability for use in an official proceeding (to wit: a federal grand jury investigation in the Eastern District of New York).

All in violation of Title 18, United States Code, Section 1512(c)(1).

## COUNT FOURTEEN
### (Obstruction - 18 U.S.C. § 1503)

28. Paragraphs 1 through 12 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

29. Between on or about March 7, 2017, and June 8, 2017, within the Eastern District of New York, the defendants,

> ASA GOSMAN, BRYAN GOSMAN, and acting through
> its agents and employees, BOB GOSMAN CO., INC.,

did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due administration of justice (to wit: a federal grand jury investigation in the Eastern District of New York) by withholding emails and documents that were responsive to at least one grand jury subpoena.

All in violation of Title 18, United States Code, Section 1503.

## FORFEITURE ALLEGATION
### (Conspiracy, Mail Fraud, and Wire Fraud)

30. The allegations contained in Counts One through Ten of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 371, 981(a)(1)(C), 1341, 1343, 1956(c)(7), and 1961(1) and Title 28, United States Code, Section 2461(c).

31. Upon conviction of one or more of the offenses alleged in Counts One through Ten of this Indictment, the convicted defendants shall forfeit to the United States, pursuant to Title 18, United States, Code, Section 981(a)(1)(C), any property, real or personal, constituting or derived from proceeds traceable to the fraud offenses, *i.e.,* Conspiracy, Mail Fraud, and Wire Fraud.

32. If any of the property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

The United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), incorporated by Title 18, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 371, 981(a)(1)(C), 1341, 1343, 1956(c)(7), and 1961(1) and Title 28, United States Code, Section 2461(c).

Dated: April 20, 2021

JEAN E. WILLIAMS
ACTING ASSISTANT ATTORNEY
GENERAL, ENVIRONMENT AND
NATURAL RESOURCES DIVISION
U.S. DEPARTMENT OF JUSTICE

By: _____
Christopher L. Hale, Trial Attorney
Environmental Crimes Section
150 M Street NE, Suite 4.117
Washington, DC 20004
Phone: (202) 305-0321
Email: christopher.hale@usdoj.gov

A TRUE BILL

*Karen Swiecicki*     4/20/2021
Foreperson                Date