UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                          Plaintiff,

-against-

CHRISTOPHER WINKLER,

                                         Defendant.
-----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
21-CR-217 (JMA)

FILED
CLERK
1:15 pm, Dec 20, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Defendant Christopher Winkler ("Winkler") is charged in a five-count Superseding Indictment, (ECF No. 46), with Conspiracy in violation of 18 U.S.C. § 371 (Count One); Mail Fraud in violation of 18 U.S.C. § 1341 (Counts Two and Three); and Obstruction in violation of 18 U.S.C. § 1519 (Counts Four and Five). Winkler now moves to dismiss the mail fraud object of Count One, Object (c), along with the substantive mail fraud charges in Counts Two and Three; and the substantive obstruction charges in Counts Four and Five.[1] (ECF No. 61.) In addition, Winkler asks the Court to set dates for (i) disclosure of 404(b) evidence, (ii) filing of motions in limine, (iii) disclosure of the Government's exhibit list, (iv) expert disclosures, and (v) disclosure of 3500 material. (Id.) For the following reasons, the motion to dismiss is denied in its entirety, and the Court declines at this time to set a schedule for the above-listed pretrial matters.

                                     **I.      MOTION TO DISMISS**

**A.     Mail Fraud Counts**

The Superseding Indictment alleges that from 2014 to 2017, Winkler, a fishing captain and licensed National Oceanic and Atmospheric Administration ("NOAA") operator of the fishing

---

[1] As the Government notes, (Gov't Opp'n at 2 n.1, ECF No. 66), Winkler does not explicitly seek to dismiss the obstruction object of Count One, Object (b), even though he moves to dismiss the substantive obstruction charges in Counts Four and Five. To the extent that he moves to dismiss Object (b) of Count One, however, his motion is denied for the reasons set forth infra Section I.B.

vessel "New Age," harvested more than 220,000 pounds of fish in excess of the amounts permitted by applicable law, and subsequently filed false Fishing Vessel Trip Reports ("FVTRs") failing to report that he landed fish in excess of applicable law. (Superseding Indictment at ¶¶ 1, 14(a).)

Count One, Object (c) alleges that Winkler conspired to "defraud NOAA and the State of New York of fish and the fair market value thereof, and to obtain money and property from NOAA and the State of New York by means of materially false and fraudulent pretenses and representations[.]" (Id. ¶ 13(c).) Counts Two and Three allege that Winkler harvested fish in excess of the amounts permitted by applicable law, and that to conceal his overharvesting, he mailed false FVTRs to NOAA between May 18, 2016 and June 24, 2016 (Count Two), and between January 26, 2017 and February 8, 2017 (Count Three). (Id. ¶¶ 17–18.)

Winkler moves to dismiss the mail fraud object of Count One and the substantive mail fraud charges in Counts Two and Three. He contends that the overharvesting of fish, as alleged in the Superseding Indictment, cannot support a mail fraud charge because neither the federal government nor the State of New York was deprived of a cognizable property interest. (Def.'s Mem. at 1–15, ECF No. 62.)

The Court disagrees and finds highly persuasive Judge Bianco's decision in United States v. Kokell, No. 16-CR-595 (E.D.N.Y. Aug. 24, 2017). In Kokell, as here, the Government charged the defendant with mail fraud in connection with the wrongful overharvesting of fish and the filing of false FVTRs. (Indictment at ¶¶ 1–18, No. 16-CR-595 (E.D.N.Y. Nov. 22, 2016), ECF No. 1.) In Kokell, as here, the defendant moved to dismiss the mail fraud charges on the ground that the government had not been deprived of "property." Judge Bianco roundly rejected this argument and denied the defendant's motion to dismiss. (Transcript of Oral Argument at 33–36, No. 16-CR-595 (Aug. 24, 2017), "Kokell Tr.") Despite Winkler's disagreement with Judge Bianco's decision in Kokell, (Def.'s Mem. at 14), the Court adopts its reasoning here.

2

Specifically, the Court finds United States v. Bengis, 631 F.3d 33 (2d Cir. 2011), to be highly persuasive, if not controlling, on this question. The key issue presented in Bengis was whether South Africa had a property interest in illegally harvested lobsters, such that defendants would be subject to an order of mandatory restitution for an "offense against property" under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A. 631 F.3d at 38–39. Interpreting the applicable South African regulatory scheme, the Second Circuit explained that lobsters harvested illegally did not become property of the fishermen—instead, they were subject to seizure and sale by the government of South Africa. Id. at 39. Under this regulatory framework, "the moment a fisherman pulls an illegally harvested lobster out of the sea, a property right to seize that lobster is vested in the government of South Africa." Id. That is because "[e]vading seizure of overharvested lobsters . . . deprives South Africa of an opportunity to sell those illegally captured lobsters at market price and retain the proceeds, representing an economic loss to South Africa each time an illegally harvested lobster goes unseized." Id. The Fourth Circuit later expressly adopted the reasoning of Bengis in United States v. Oceanpro Indus., Ltd., 674 F.3d 323, 331–32 (4th Cir. 2012), recognizing that Maryland and Virginia had cognizable property interests in fish harvested in violation of state laws, and that such interests vested at the moment the fish were caught.

Like Judge Bianco in Kokell, (Kokell Tr. 34:6–36:18), the Court finds Bengis entirely analogous to the case at hand. The federal and state property interests in the fish allegedly overharvested by Winkler are, as the Government says, "functionally indistinguishable," (Gov't Opp'n at 8), from the property interest recognized in Bengis. Under the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), 16 U.S.C. § 1860(a), and its implementing regulations, as well as the various provisions of the New York State Environmental Conservation Law cited by the Government, illegally harvested fish are subject to seizure and sale by the federal and state governments. Had Winkler not concealed his

3

overharvesting of fish, the government would have been able to seize and sell those fish. Accordingly, and despite Winkler's arguments to the contrary, the Court finds—as in Bengis and Kokell—that the government's interest in the fish goes beyond a mere regulatory interest in administering the fishing activities in its waters.

Winkler also argues that, because the Magnuson-Stevens Act provides procedures by which the federal government's claim to proceeds from the sale of overharvested fish may be challenged, its interest in the fish is only "contingent and speculative" prior to adjudication. (Def.'s Mem. at 13.) Again, the Court disagrees. As Judge Bianco recognized in Kokell, procedures to challenge, as a matter of due process, the federal government's possession and sale of overharvested fish, do not render its interest in the fish "conditional or speculative such that no property right exists." (Kokell Tr. at 35:12–16.) For this reason, the Court concludes, as in Bengis and Kokell, that the government's interest in the allegedly overharvested fish vested at the moment the fish were harvested in violation of federal and state law.

Finally, the Court disagrees with Winkler's assertion that the rule of lenity applies here. (Def.'s Mem. at 15.) The rule of lenity is applied to resolve ambiguity in favor of a defendant only "at the end of the process of construing what Congress has expressed when the ordinary canons of statutory construction have revealed no satisfactory construction." Lockhart v. United States, 577 U.S. 347, 361 (2016) (internal quotation marks and citation omitted). Here, however, the meaning of "property" with respect to Title 18 offenses is unambiguous. To the extent that there was any ambiguity regarding the meaning of "property," the Second Circuit resolved it in Bengis. See 631 F.3d at 39–40 (citing Pasquantino v. United States, 544 U.S. 349, 355–57 (2005)).

For these reasons, the motion to dismiss the mail fraud object of Count One, Object (c), as well as the substantive mail fraud charges in Counts Two and Three, is denied.

4

B.  **Obstruction Counts**

Counts Four and Five allege that Winkler falsified business records in violation of 18 U.S.C. § 1519 by filing false FVTRs between May 18, 2016 and June 24, 2016 (Count Four), and between January 26, 2017 and February 3, 2017 (Count Five). (Superseding Indictment ¶ 20.) Winkler also moves to dismiss these counts. (Def.'s Mem. at 15–16.) He asserts that the filing of false FVTRs is not punishable under Section 1519 because the FVTR form refers only to punishment under 18 U.S.C. § 1001. (Id.) Again, the Court disagrees.

Winkler and the Government agree that barring legislative evidence to the contrary, when an act violates two criminal statutes, the Government may elect to prosecute under either statute. (Id. at 15; Gov't Opp'n at 14.) Here, the Court finds that there is simply no evidence of a legislative intent to preempt prosecution under Section 1519 or repeal it by implication.

First, citing United States v. Tomeny, 144 F.3d 749 (11th Cir. 1998), Winkler himself acknowledges that the legislative history of the Magnuson-Stevens Act does not reflect congressional intent to preempt prosecution for filing false FVTRs under other criminal statutes—whether Section 1001 or Section 1519. (Def.'s Mem. at 16.)

Second, the Court finds nothing that demonstrates an implied repeal of Section 1519 in favor of Section 1001. As explained in In re Stock Exchanges Options Trading Antitrust Litigation, 317 F.3d 134 (2d Cir. 2003), cited by the Government, (Gov't Opp'n at 15), the implied repeal doctrine operates in only two "narrowly-defined situations." Id. at 147 (internal quotation marks and citations omitted). "[F]irst, when an agency, acting pursuant to a specific Congressional directive, actively regulates the particular conduct challenged, . . . and second, when the regulatory scheme is so pervasive that Congress must be assumed to have forsworn the paradigm," here, with respect to fishing enforcement. Id. (citations omitted). These narrow exceptions are inapplicable here. First, the FVTR form was created by NOAA, not Congress. Its reference to Section 1001

5

therefore says nothing about a "specific [c]ongressional directive," In re Stock Exchanges, 317 F.3d at 147, regarding the regulation of false FVTRs. Second, the Court does not see NOAA's regulatory scheme as so pervasive that it must assume Congress intended to yield the field of criminal enforcement to NOAA.

The Court again finds Judge Bianco's reasoning in Kokell highly persuasive. In Kokell, as here, the Government elected to charge the defendant's filing of false FVTRs under Section 1519 rather than Section 1001. There, as here, the defendant argued that his conduct was not punishable under Section 1519 because the FVTR form referred only to punishment under Section 1001. Judge Bianco rejected the defendant's theory for substantially the same reasons as the Court does here. (Kokell Tr. at 38:14–40:6.)

Finally, the Court agrees with the Government, (Gov't Opp'n at 16–17), and with Judge Bianco, (Kokell Tr. at 40:7–18), that there is no due process violation. The FVTR form warns that "making a false statement on this form is punishable by law." (Def.'s Mem. at 16.) It thus provides clear notice to individuals reviewing and completing FVTRs that they are subject to prosecution for obstruction of justice if they make false statements on the form. That the form refers only to Section 1001 does not suggest to a reasonable person that prosecution under Section 1519 is foreclosed.

For these reasons, the motion to dismiss the substantive obstruction charges in Counts Four and Five is denied.

## II.     PRETRIAL SCHEDULING REQUESTS

Winkler also asks, "[t]o help assure that the trial proceeds efficiently and that the defense has sufficient time to prepare," that the Court schedule dates for (i) disclosure of 404(b) evidence, (ii) filing of motions in limine, (iii) disclosure of the Government's exhibit list, (iv) expert disclosures, and (v) disclosure of 3500 material. (Def.'s Mem. at 17.) The Government, on the

other hand, argues that "definitive scheduling should wait until after resolution of the dispositive motions, with the ability of the parties to confer prior to the Court setting a schedule." (Gov't Opp'n at 17.)

The Court declines at this time to set a schedule for the above-listed pretrial matters. Instead, a telephone Status Conference is set for January 5, 2023 at 11:00 a.m. before the undersigned. The parties are directed to dial 1-877-873-8017 and enter access code 4785432 at the prompt.

### III.   CONCLUSION

For the foregoing reasons, Winkler's motion to dismiss is DENIED in its entirety. The Court declines at this time to set a schedule for the pretrial matters raised in Winkler's motion. A telephone Status Conference is set for January 5, 2023 at 11:00 a.m. before the undersigned.

**SO ORDERED.**

Dated:  December 20, 2022
Central Islip, New York

/s/   (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE