```
UNITED STATES DISTRICT COURT                    For Online Publication Only
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA
                                                         ORDER
        -against-                                        21-CR-217 (JMA)


CHRISTOPHER WINKLER,
ASA GOSMAN, and
BRYAN GOSMAN,

               Defendants.
-----------------------------------------------------X
```

FILED
CLERK
1/6/2025 5:31 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, UNITED STATES DISTRICT JUDGE:**

The Court orders that Christopher Winkler pay restitution in the amount of $725,000, which shall be paid to the New York State Marine Resources Account of the Conservation Fund.

The Court also orders that Bryan and Asa Gosman (the "Gosmans") pay restitution in the amount of for $247,296.82, which shall be paid to the New York State Marine Resources Account of the Conservation Fund.

All three defendants—Winkler, Asa Gosman, and Bryan Gosman—are jointly and severally liable for this $247,296.82, which concerns Winkler's conduct concerning GNY and Bob Gosman, Inc. Only Winkler is liable for the $477,703.18 in restitution that concerns Winker's conduct concerning Slavin. Because the Gosmans only pled guilty to Count 1 in the Original Indictment, they cannot be held liable for restitution concerning Slavin. Below the Court addresses the arguments raised by Winkler and the Gosmans that warrant brief discussion.

**A.  The Gosmans**

The Gosmans assert that New York State does not have a "property interest" in the overharvested fish at issue that gives rise to a "'pecuniary loss' compensable through" the Mandatory Victims' Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. (ECF No. 158 at

1

1.) In his motion to dismiss, Winkler similarly argued that the federal government and New York lacked property interests in the fish at issue. The Court rejected that argument, finding persuasive Judge Bianco's ruling in United States v. Kokell, which relied on both United States v. Bengis, 631 F.3d 33, 38 (2d Cir. 2011), and United States v. Oceanpro Indus., Ltd., 674 F.3d 323 (4th Cir. 2012). See United States v. Winkler, No. 21-CR-217, 2022 WL 17824064, at *2 (E.D.N.Y. Dec. 20, 2022) ("The federal and state property interests in the fish allegedly overharvested by Winkler are, as the Government says, 'functionally indistinguishable,' . . . from the property interest recognized in Bengis."). The Gosmans' arguments similarly fail. New York law is analogous to all the relevant laws at issue in Bengis and Oceanpro Indus., including the Virginia laws in Oceanpro Indus. New York has a property interest in the illegally harvested fish, suffered a pecuniary loss, and is therefore entitled to restitution under the MVRA.[1] Accordingly, the Court orders the Gosmans to pay restitution to New York under the MVRA in the amount of $247,296.82

There are also two other grounds for awarding restitution against the Gosmans here.

First, in addition to awarding restitution under the MVRA, the Court also finds that the Gosmans are liable for the same amount of restitution pursuant to the Victim Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663. The VWPA defines "victim" as a "person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2). "This is a broad definition, requiring the victim to have some interest that was 'harmed.'" Oceanpro Indus., 674 F.3d at 330–31. The Court orders the Gosmans to pay New York $247,296.82 in restitution pursuant to VWPA. See id. at 330 (explaining that "[e]ven if Maryland and Virginia

---

[1] The Government asserts that if the New York State were found not to be a victim, then the federal government "would still be a victim and could receive whatever amount of restitution funds that the Court designates." (ECF No. 159 at 2.) The Government has not sufficiently explained how the Court could require the Gosmans to pay restitution to the federal government given that NOAA waived restitution in the Gosmans' plea agreements. However, because the Court finds that New York State is a victim, the Court need not reach this question.

did not have a property interest in the striped bass, they surely did possess a legitimate and substantial interest in protecting the fish in their waters as part of the natural resources of the State and its fishing industries," and, as such, were sufficiently harmed to qualify as victims under the VWPA).

Second, the Gosmans' plea agreements provide an additional ground for ordering the Gosmans to pay $247,296.82 in restitution to New York. Their plea agreements provide that, "in accordance with 18 U.S.C. § 3663A(a)(3)," restitution shall be "directed to the State of New York." 18 U.S.C. § 3663A(a)(3), which is part of the MVRA, states that "[t]he court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."

Thus, even if New York did not qualify as a victim under the MVRA, the Gosmans' plea agreements still authorized the Court to award restitution to New York pursuant to § 3663A(a)(3). The Gosmans' plea agreements do not cap the Gosmans' potential restitution liability to New York under 18 U.S.C. § 3663A(a)(3) at $5,000. Rather, the plea agreements simply include a non-binding joint recommendation that the Gosmans each pay $5,000 in restitution. Accordingly, the Court finds that—even if New York does not qualify as victim under the MVRA—the Gosmans' plea agreements still authorized the Court to award $247,296.82 in restitution to New York State pursuant to 18 U.S.C. § 3663A(a)(3).[2]

---

[2] The Gosmans argue that the provisions in their plea agreements in which they agreed to pay restitution to New York under 18 U.S.C. 3663A(a)(3) "necessarily impl[y]" that New York does not qualify as a victim under the MVRA. However, even if their plea agreements explicitly stated that New York does not qualify as a "victim" under the MVRA—which their plea agreements do not do—the Court would not be bound by those agreements in determining whether New York qualifies as a victim and is, thus, owed mandatory restitution under the MVRA. See United States v. South, No.12-CR-21, 2013 WL 4511653, at *6 (D. Mont. Aug. 15, 2013) (explaining that the "government cannot waive [a third-party victim's] right to restitution under the MVRA"). As explained above, the Court has found that New York does, in fact, qualify as a victim under the MVRA.

The Court orders the Gosmans to pay $247,296.82 in restitution to New York State within 90 days.

**B.  <u>Winkler</u>**

Except for the issue of joint and several liability, the Court rejects all of Winkler's challenges to restitution.

Calculating restitution here is not so complex that the Court should forego awarding restitution.  The delay in awarding restitution here was due to the Court's concern about the potential impact of the Gosmans' sentencing on the restitution award and the prospect of joint and several liability, which Winkler raised, for the first time, at sentencing.  Additionally, the Court permitted both Winkler and the Gosmans to file supplemental briefing after sentencing concerning restitution.  Both Winkler and the Gosmans raised new arguments that they did not raise in their sentencing papers or at sentencing.  The Court was ultimately persuaded by one aspect of Winkler's arguments and, as set forth herein, ended up imposing joint and several liability on the Gosmans for $247,296.82, which ultimately may benefit Winkler.

Winkler asserts that, under <u>Bengis</u>, the government's failure to stop Winkler's over-fishing after obtaining evidence of this over-fishing in December 2015 precludes awarding restitution for any fish that Winkler caught after December 2015.  The Court disagrees.  Over-fishing can be difficult to investigate to detect, investigate, and prosecute.  The government was not required to compromise the investigation into Winkler (and his potential prosecution) by attempting to stop his criminal conduct at the earliest signs of illegal fishing.  Winkler's criminal conduct, both and after December 2015, prevented NOAA from seizing and selling fish after December 2015 because, <u>inter alia</u>, the government reasonably decided not to compromise its investigation into Winkler's prior and ongoing illegal fishing.  The Court also notes that Winkler's argument only

mentions NOAA and says nothing about DEC, which was also deprived of an opportunity to seize and sell fish after December 2015 by Winkler's criminal conduct.

Winkler also insists that the Court must determine, for purposes of calculating restitution, which fish were caught in federal waters and which fish were caught in New York's territorial waters. According to Winkler, the Court must then apportion the total restitution amount between the United States and New York State. This argument fails because, inter alia, New York had the right to seize and sell all the illegal fish Winkler landed in New York irrespective of whether those fish were caught in state or federal waters. (See Tr. 334 (explaining that fish caught outside of New York State must still comply with New York state regulations and daily trip limits for the fish)); 6 CRR-NY §40.1(d)(1) ("It is unlawful for the holder of a commercial foodfish license . . . to take or have in their possession or on board the same vessel any food fish in addition to what is allowed by any regulations affecting the commercial fishery").[3]

---

[3] The Court rejects Winkler's argument that, under the MVRA, the Court must determine where the fish at issue were caught and must then apportion the total restitution amount between the United States and New York State accordingly. If the MVRA actually required the Court to make such a determination, the Court would consider ordering Winkler to pay restitution under the VWPA, which, as explained earlier, broadly defines a "victim" as a person "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2). Apportionment of the $725,000 would not be required under the VWPA. Moreover, even if apportionment were somehow required under both the MVRA and the VWPA, the Court could permit the federal government to also seek restitution from Winkler in its own right as NOAA's decision not to seek restitution was premised on the assumption that New York can recover the entire $725,000 at issue. Once NOAA obtained a restitution judgment, it could presumably assign any restitution judgment it obtained (or any restitution payments it actually receives) to New York State.

The Court orders Winkler to pay restitution to New York State in the amount of $725,000, payable at a rate of $25 while in custody, and a rate of 10% of gross income per month while on supervised release.

**SO ORDERED.**

Dated:   Central Islip, New York
	January 6, 2025

                                            ____ /s/ (JMA)_____
                                            Joan M. Azrack
                                            United States District Judge